IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CARYL JEAN DECKER and DENNIS DECKER,<br><br>     *Plaintiffs*,<br><br>v.<br><br>TARGET CORPORATION, a Minnesota corporation,<br><br>     *Defendant*. | **MEMORANDUM, DECISION, AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FINDINGS OF SPOLIATION AND FOR SANCTIONS**<br><br>Case No. 1:16-cv-00171-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is the Motion for Findings of Spoliation and for Sanctions ("Motion") filed by Caryl Jean Decker and Dennis Decker ("the Deckers") against Defendant Target Corporation ("Target"). ECF No. 27.

## BACKGROUND

This Motion arises from a trip and fall incident that occurred on December 26, 2015, at the Target store located in Riverdale, Utah. Caryl Jean Decker was shopping when she tripped on a flatbed stocking cart and fell onto the floor, suffering serious injury. Mrs. Decker, bleeding from the head, received medical attention at the scene of the incident. She was transported from Target by ambulance.

In response to the incident, Target employees Mackenzie Steele and Trevor Phillips reviewed video surveillance footage of the incident and created a copy of the portions of the video that included Mrs. Decker in the frame. Steele and Phillips did not save any other portions of the video. The unsaved portions of the footage were later automatically overwritten by Target's

system, which only maintains video surveillance footage for approximately fifteen to twenty-five days.

Exactly one month after the incident, on January 26, 2016, the Deckers delivered a letter to Target, through counsel, requesting that Target preserve "all pertinent records and electronic records pertaining to [the] incident or that could relate to [the] incident," as well as "a copy of any video surveillance that shows [the] accident or the area of the accident at any time before, during, or after the event." Motion for Findings of Spoliation and for Sanctions ("Motion") Exhibit 6.

Following the demand letter and the subsequent filing of this lawsuit, the Deckers and Target engaged in several rounds of discovery and document production. On September 14, 2017, in their "Third Set of Requests for Production of Documents," the Deckers specifically requested Target's training records and safety statistics from 2015. However, Target's internal policy only mandated the retention of safety records and safety statistics for a period of twelve months, and therefore any materials from 2015 that had not already been produced had been deleted.

On June 8, 2018, the Deckers filed this motion for a finding of spoliation and for sanctions based on 1) Target's failure to save more of the video surveillance footage; 2) Target's failure to retain training records from 2015; and 3) Target's failure to retain the store's safety statistics and records for 2015.

## ANALYSIS

The Deckers, having failed to seek sanctions under Fed. R. Civ. P. 37, seek sanctions under a spoliation of evidence theory. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Mathis v. John Morden Buick, Inc.,* 136 F.3d 1153, 1156 (7th Cir. 1998) ("When a plaintiff fails to seek sanctions under Rule 37 and thus 'forecloses access to the substantial weaponry in the district court's arsenal,' the plaintiff's only remaining option is to seek sanctions

under a spoliation of evidence theory.") "Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner*, 563 F.3d at 1149 (quoting *Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).

## A. IMMINENCE

The duty to preserve evidence is triggered when future litigation is likely or imminent. "In most cases, the duty to preserve is triggered by the filing of a lawsuit, but that duty may arise even before a lawsuit is filed if a party has notice that future litigation is likely." *Philips Electronics N. Am. Corporation v. BC Technical*, 773 F.Supp.2d 1149, 1195 (D. Utah 2011). In this case, it is apparent that Target was on notice that litigation was imminent when Mrs. Decker tripped, fell, and left the Target store in an ambulance on December 26, 2015. Target argues it was not on notice until the Deckers' demand letter arrived on January 26, 2016; however, that argument is disingenuous. Mrs. Decker fell and an ambulance was called. This was a "guest incident" of the sort that Target's internal policies note create the "potential for a general liability claim to be brought against Target." Memorandum Providing Additional Evidence on Plaintiffs' Motion for Finding of Spoliation and for Sanctions ("Second Reply Memorandum") Exhibit 2. Additionally, directly following the incident, at least two separate Target employees wrote reports of the incident and two other Target employees reviewed and saved portions of the surveillance footage, generating material that would not have been created or preserved absent the imminence of litigation. Thus, Target knew or should have known that litigation was a very strong possibility upon the occurrence of Mrs. Decker's accident.

In the case of the store training records and safety statistics, while Target arguably should have been on notice at the time of the incident that it needed to preserve all training and safety records, there can be no question that it was on notice when it received the Deckers' demand letter on January 26, 2016. According to Target's own internal policy, safety records are maintained for a period of twelve months. Thus, safety and training evidence should have been retained and available to be produced from a year prior (January 2015) to receipt of the preservation letter (received January 2016).

### B. Prejudice

To support a finding of spoliation of evidence, the Deckers must establish that Target has deleted or failed to preserve relevant evidence and that they have been prejudiced thereby. The court concludes that the Deckers have met this burden with respect to the deleted video surveillance footage, but they have not established that they have been prejudiced by any failure to preserve training records. Similarly, the Deckers have not been prejudiced by the failure to preserve the safety statistics, but should Target attempt to introduce testimony of its safety record at trial, a finding of prejudice would be appropriate.

#### 1) Video Surveillance

The video surveillance footage produced by Target includes approximately thirty seconds when Mrs. Decker first appears on camera (7:09:29-7:10:05 AM) as well as twenty seconds immediately before the accident and twenty minutes after (7:21:28-7:42:20 AM). Target policy dictates that Target employees preserve twenty minutes of footage before and twenty minutes of footage after any incident. Second Reply Memorandum Exhibit 2. However, the footage from 7:10 AM to 7:21 AM was not saved, nor was any footage prior to that, including the ten minutes

between the store opening at 7:00 AM and Mrs. Decker's first appearance on camera at approximately 7:09 AM.[1]

Due to this deletion, the Deckers do not know who placed the flatbed stocking cart at the location of the incident, how long it was there, or why it was there. The Deckers are not prejudiced by the lack of evidence of who placed the flatbed cart because Target does not contest that it was placed on the floor by one of Target's own employees. However, the Deckers are prejudiced by the lack of footage that would have documented whether or not the cart was being "worked" or "attended" by a Target employee. In the footage that remains, there is no evidence of a Target employee working the flatbed cart, nor does the flatbed cart appear to move in the eleven-minute gap between the two clips. A reasonable juror could infer that the cart was unattended. However, in defending against the Deckers' claims, Target intends to offer evidence that one or more Target employees were working or attending the cart.[2] Thus, the Deckers are prejudiced in that they have no way to disprove that evidence.

2) **Training Records**

The Deckers have not been prejudiced by the failure to produce training records. First, it is not even clear that Target failed to produce any training records. Target has produced copies of the "safety binder," a working document in which Target employees retain attendance lists and safety observation cards from monthly safety meetings. Target retained and produced safety observation

---

[1] The incident occurred on the day after Christmas. On that day, the store opened one hour early.

[2] Mackenzie Steele, a Target Asset Protection "ETL" (Extract, Transform, Load) employee at the Riverdale store at the time of the incident, and one of two employees who reviewed the full surveillance footage, mentions in his deposition that he may have seen employees working around the cart. Steele Deposition (Sept. 20, 2017) 50:16-18. Besides Steele, neither Target nor the Deckers have identified any witness who can speak to what the cart was doing there, what was on it, or how long it was there.

5

cards and attendance lists dating back to July 2015. These documents include the months of July through December 2015, as well as the months following the incident in 2016. According to Target, although the original binder no longer exists, all documents that were in the binder have been produced to the Deckers. Final Pretrial Conference and Motion Hearing (Oct. 5 2018). The Deckers contend that the binder should have contained additional notes from the meetings, but Target has represented that any notes that were created, were saved in the binder, and thus have been produced.

The Deckers also seek additional records of a supplemental employee training held by Target on the topic of flatbed carts referenced in the December 10, 2015 safety observation card. On the observation card, Target employees noted that Target personnel were failing to remove flats from the store floor. The proposed response to this observation was to "educate teams on proper safety when using a wave on sale floor during Dec[ember] safety [meeting] & through email— education." Motion Exhibit 1. Thus, the observation card suggests that Target was aware of the dangers of unattended flats and had proposed training to remedy these dangers prior to Mrs. Decker's incident. But Target has no record of any training actually being provided to its personnel about "proper safety" procedures surrounding the use of flats on the store floor and it is unclear whether the proposed training even took place. Thus, the Deckers have been unable to establish that Target destroyed any evidence. And whether or not the training occurred, the Deckers have not been prejudiced because the safety observation cards that were produced are sufficient to demonstrate that Target was on notice of the potential danger associated with flatbed carts.

3) **Safety Statistics**

The Deckers also complain that Target intends to introduce evidence at trial suggesting that the Target store in question had a good safety record. But Target has not produced any of the

underlying safety statistics for the store. Target responds that the safety statistics are dynamic electronic documents, updated monthly, that cannot be produced at this time. But, whether they ever could have been or should have been produced is not material to the question of prejudice. The court concludes that the Deckers are not prejudiced by the lack of safety statistics because the ultimate question in this case is whether Target's placement of a flatbed cart in the middle of a walkway posed an unreasonable risk that violated the standard of care. General safety statistics do not indicate whether Target was negligent in leaving the flatbed cart in the aisle.

The court cautions Target that its failure to produce its safety statistics will prevent it from offering any evidence that the Riverdale store had high safety scores at the time of the accident. Otherwise, the Deckers would be prejudiced by Target's failure to provide the underlying safety statistics over which it has exclusive control.

### C. BAD FAITH

The Deckers seek adverse inference jury instructions regarding the failure to preserve the video surveillance footage and the alleged deletion of the training records.[3] To be entitled to an adverse inference instruction, the Deckers must establish that Target acted in bad faith in failing to preserve the evidence at issue. "[I]f the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009).

"Bad faith" is a question of fact that both parties in this case have asked the court to resolve. *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) ("Bad faith is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference"). In evaluating

---

[3] The Deckers do not seek an adverse inference regarding the safety statistics. Instead, they seek an order precluding Target from offering evidence regarding the store's safety record.

whether Target acted in bad faith, the court must decide whether "the loss of potential evidence was the result of ignorance or incompetence as opposed to intentional acts." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).

The video footage as issue was reviewed shortly after the incident by two Target employees, Mackenzie Steele and Trevor Phillips. The employees testified that they decided not to preserve the portions of the footage where Mrs. Decker was not present because they did not believe they were relevant. In so doing, they acted in violation of Target policy requiring that employees preserve video surveillance footage showing twenty minutes before and twenty minutes after any such incident. The employees represented that they were not aware of this policy. Were the court to evaluate their actions individually, the court would not conclude they acted in bad faith. But these employees were not acting as individuals, they acted as agents of Target, and the court concludes that Target has acted in bad faith in regards to the evidence.[4] First, Target failed to instruct its employees regarding Target policy of what footage to preserve. Second, Target employees failed to preserve all relevant footage. And third, Target's counsel now seeks to take advantage of the evidence that *Target failed to preserve* by arguing that the flatbed cart was attended or worked by Target employees during the gap in the video. It is this attempt to take advantage of a situation that Target caused that leads the court to conclude Target acted in bad

---

[4] Target is the party that destroyed the records. "The adverse inference . . . must be predicated on the bad faith of the party destroying the records." *Hernandez v. Conde*, 272 F. App'x 663, 672–73 (10th Cir. 2008) (citing *Aramburu v. Boeing Co*., 112 F.3d 1398, 1407 (10th Cir.1997)).

faith. The court will therefore instruct the jury to make the adverse inference that the flatbed cart was unattended for the twenty minutes prior to the accident.

The Deckers are not entitled to an adverse inference instruction regarding the training records because the Deckers have not established that the allegedly destroyed records were ever created. And even assuming they were created, the Deckers have failed to articulate how they have been prejudiced in light of the uncontroverted fact that the flatbed cart in question was left on the floor by a Target employee. *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008).

## CONCLUSION

The court GRANTS IN PART and DENIES IN PART plaintiffs' motion for a finding of spoliation and for sanctions. The court will include an adverse jury instruction regarding Target's failure to preserve the entire surveillance video. The court does not find that the Deckers have met their burden of establishing spoliation of the training records. The court excludes all evidence regarding the Riverdale store's safety statistics or general safety record.

Signed October 9, 2018.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge